FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 12, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RAUL F.,[1] | No.  1:24-cv-3198-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Raul F. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits. As is explained below, by

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

not calling a medical expert, the ALJ erred when evaluating Plaintiff's symptom reports and the medical opinions. This matter is remanded for further proceedings.

## I.    Background

In April 2017, Plaintiff applied for benefits, claiming disability beginning March 15, 2017, because of right-sided numbness and pain, injuries to the right hand, depression, and chronic headaches.[3] The agency denied benefits at the initial and reconsideration level.[4] On November 14, 2018, Plaintiff and his attorney attended a hearing before ALJ Timothy Mangrum, at which Plaintiff and a vocational expert testified.[5] On January 18, 2019, ALJ Mangrum issued an unfavorable decision, which denied benefits.[6] Plaintiff filed a request

_____

[3] AR 356-362, 387.

[4] AR 134, 146.

[5] AR 42-60.

[6] AR 103-123.

for review and on August 27, 2020, the Appeals Council remanded the case for further proceedings.[7]

On July 21, 2021, Plaintiff and his attorney appeared for a second hearing before ALJ Mangrum at which Plaintiff and a vocational expert testified.[8] On October 12, 2021, ALJ Mangrum issued a second unfavorable decision denying benefits.[9] On December 13, 2022, the Appeals Council denied Plaintiff's request for review.[10] Plaintiff filed suit in this Court and on June 26, 2023, the Court remanded the case for further proceedings based upon a stipulation by the parties.[11] The Appeals Council remanded the case for a hearing before another ALJ based upon the Court's order.[12]

---

[7] AR 124-131.

[8] AR 61-81.

[9] AR 15-41, 802-828.

[10] AR 1-8, 829-836.

[11] AR 841-2, 843.

[12] AR 849-856.

DISPOSITIVE ORDER - 3

On June 11, 2024, Plaintiff appeared with his attorney before ALJ Deborah Van Vleck, but the hearing was rescheduled because it started 45 minutes late and the ALJ did not think there was sufficient time to take testimony.[13] On August 13, 2024, Plaintiff again appeared with his attorney for a hearing before ALJ Van Vleck at which Plaintiff and a vocational expert testified.[14] On September 9, 2024, ALJ Van Vleck issued a partially favorable decision that found Plaintiff to be disabled as of October 27, 2022.[15]

For the period prior to October 27, 2022, the ALJ found Plaintiff's alleged symptoms were "not fully supported prior to October 27, 2022."[16] As to the medical opinions, the ALJ found:

- the reviewing opinions of Deborah Baylor, MD, and the treating opinions of Onel Martinez, DO, and Catherine Choi, DO, to be not persuasive.

---

[13] AR 762-768.

[14] AR 769-801.

[15] AR 728-761.

[16] AR 742-744.

DISPOSITIVE ORDER - 4

- the reviewing opinions of state agency consultants Dan

  Donahue, MD, and Bruce Eather, PhD, to be not persuasive.[17]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through

  December 31, 2022.

- Step one: Plaintiff had not engaged in substantial gainful

  activity since March 15, 2017, the alleged onset date.

- Step two: Since the alleged onset date of disability, March 15,

  2017, through the established onset date of October 27, 2022,

  Plaintiff has had the following severe impairments:

  amputation of the distal phalanx of middle finger of right

  hand, degenerative changes of fourth digit of right hand,

  overuse syndrome affecting the intrinsic musculature of right

  hand, and mild degenerative disc disease of the cervical,

  thoracic, and lumbar areas of the spine.

- Step two: Beginning on the established onset date of disability,

  October 27, 2022, Plaintiff has had the following severe

---

[17] AR 744-745.

impairments: amputation of the distal phalanx of middle

finger of right hand, degenerative changes of fourth digit of

right hand, overuse syndrome affecting the intrinsic

musculature of right hand, and mild degenerative disc disease

of the cervical, thoracic, and lumbar areas of the spine as well

as degenerative joint disease of the right knee.

- Step three: Plaintiff did not have an impairment or

  combination of impairments that met or medically equaled the

  severity of one of the listed impairments.

- RFC: Prior to October 27, 2022, Plaintiff had the RFC to

  perform light work except:

  [he] was limited to frequent reaching, handling, and
  fingering with the right upper extremity. [Plaintiff] had
  no limitations with the left upper extremity. [Plaintiff]
  was limited to occasional climbing of ladders, ropes, and
  scaffolds.

- RFC: Since October 27, 2022, Plaintiff had the RFC to perform

  sedentary work except:

  [he] was limited to frequent reaching, handling, and fingering
  with the right upper extremity. [Plaintiff] had no limitations
  with the left upper extremity. [Plaintiff] was limited to
  occasional climbing of ladders, ropes, or scaffolds.

- Step four: Plaintiff has no past relevant work.

DISPOSITIVE ORDER - 6

- Step five: Prior to October 27, 2022, Plaintiff was capable of performing work available in the general economy such as a cleaner/housekeeper (DOT 323.687-014), cafeteria attendant (DOT 311.677-010), and garment sorter (DOT 222.687-014).[18]

Plaintiff timely requested review of the ALJ's decision by this Court.[19]

## II.     Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[20] Substantial evidence is

---

[18] AR 738-749.

[19] ECF No. 1.

[20] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]

## III.   Analysis

Plaintiff argues the ALJ erred by rejecting Plaintiff's symptom testimony, by finding the opinions of the State agency medical consultant and the treating sources unpersuasive and making her own interpretation of the medical evidence, and by finding Plaintiff's knee impairment and chronic headaches not severe prior to October 27, 2022.  In contrast, the Commissioner maintains that the ALJ's findings

---

[21] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

were supported by substantial evidence and that any possible error is harmless. As is explained below, by not calling a medical expert to offer testimony as to the progression of Plaintiff's knee impairment and its associated symptoms, the ALJ erred when evaluating Plaintiff's reported symptoms.

**A.      Symptom Reports: Plaintiff establishes consequential error.**

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were not fully supported by the record for the time period prior to October 27, 2022.[22] Plaintiff argues that the ALJ erred by arbitrarily concluding that Plaintiff's knee impairment became severe on the date that he fell because subsequent surgery established that he was suffering from advanced Grade 3 to 4 chondromalacia and that because this condition was gradual, not sudden, expert testimony was needed to determine when it became disabling.  As is discussed below, the ALJ's date-of-disability finding is not supported by substantial evidence given the

_____

[22] AR 742-744.

1    ALJ's failure to call a medical examiner to offer an opinion based on

2    the complete record, as to the date that Plaintiff's chondromalacia

3    would reasonably have been expected to limit him to sedentary rather

4    than light exertional activities.

5        1.    <u>Standard</u>

6        The ALJ must identify what symptom claims are being

7    discounted and clearly and convincingly explain the rationale for

8    discounting the symptoms with supporting citation to evidence.[23] This

9    requires the ALJ to "show his work" and provide a "rationale . . . clear

10   enough that it has the power to convince" the reviewing court.[24] Factors

11   the ALJ may consider when evaluating the intensity, persistence, and

12   limiting effects of a claimant's symptoms include: 1) objective medical

13   evidence, 2) daily activities; 3) the location, duration, frequency, and

14   intensity of pain or other symptoms; 4) factors that precipitate and

15   aggravate the symptoms; 5) the type, dosage, effectiveness, and side

16   effects of any medication the claimant takes or has taken to alleviate

17   _____

18   [23] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

19   [24] *Id.* at 499.

pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[25]

### 2. Plaintiff's Reported Symptoms

Plaintiff testified that he was having knee problems at the time that he filed his application in 2017 and was not able to stand on his feet for very long.[26]

The medical records reflect that Plaintiff reported chronic pain in his right knee from October 2017 through the date of the decision. On October 30, 2017, Plaintiff was seen at Central Washington Family Medicine by Patrick Vigil, MD.[27] Dr. Vigil noted: "Patient words: He is here to discuss several issues right knee and leg pain, started about a month ago, bending makes it worse as does prolonged physical activity.

---

[25] 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c). *See also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[26] AR 798.

[27] AR 599-600.

1   Felt in the back of the thigh, no knee swelling. Also discussed chronic

2   headaches, without aura, treated with short acting analgesics but does

3   not remember ever having a prophylactic medication. Occurs once a

4   week or more, stable course, moderate severity and interference with

5   daily activities."[28]

6       At an office visit with Margaret Russell, MD, of Central

7   Washington Family Medicine, on January 16, 2020, Dr. Russell noted a

8   history of varicose veins of legs, lateral epicondylitis, obesity, knee

9   pain, chronic pain of right upper extremity, prediabetes, chronic

10  tension headaches, and fatigue.[29]

11      At a visit on November 7, 2021, Dr. Vigil noted that there was no

12  swelling, minimal crepitus, and limited extension bilaterally.[30]

13  Dr. Vigil noted chronic knee pain and diagnosed bilateral chronic knee

14  pain likely secondary to osteoarthritis.[31]

---

16  [28] AR 600.

17  [29] AR 713.

18  [30] AR 600-601.

19  [31] AR 601.

On October 28, 2022, Plaintiff presented to Joan Knight, MD, of the Yakima Medical Center ER with complaints that he had fallen the day prior and landed on his right knee.[32] Plaintiff reported that prior to the fall he had been given a brace to wear on his knee and had been taking ibuprofen and Tylenol, and that he was feeling pain and tingling in his knee.[33] On examination, Plaintiff had no effusion and full range of motion of the knee, but it was point tender and X-Rays showed small effusion without fracture or dislocation.[34] Dr. Knight diagnosed a medial collateral ligament sprain.[35]

An MRI of the right knee performed on December 30, 2022, indicated mild arthritic changes with thinning of the cartilage and moderate joint effusion, with an impression of a radial tear involving the posterior horn of the medial meniscus, a subtle radial tear involving the apex posterior horn of the lateral meniscus versus chronic

---

[32] AR 1095.

[33] *Id.*

[34] *Id.*

[35] AR 1096.

degeneration, and some increased signal in the region of the posterior horn lateral meniscus inferior fascicle which may represent fascicle injury, localized joint fluid.[36]

On July 3, 2023, Dr. Griffiths performed a diagnostic arthroscopy with partial medial meniscectomy and partial chondroplasty of medial femoral condyle, right knee.[37] The preoperative diagnosis was a symptomatic medial meniscus tear of the right knee and the post-surgical diagnosis was minor mid medial meniscus tear to the leading edge, small radial flap tear with extensive grade 3, possibly small areas of grade 4, near full-thickness chondromalacia involving almost the entire medial femoral condyle with relatively normal pristine lateral compartment, intact ACL and some thinning grade 2-3 at the trochlear groove.[38]In his operative report, Dr. Griffiths noted extensive grade 3 chondromalacia to the medial femoral condyle.[39]

---

[36] AR 1102-1103.

[37] AR 1098.

[38] AR 1098.

[39] AR 1100.

On September 6, 2023, Orthopedist Gene Griffiths, MD, ordered physical therapy for the right knee as well as Synvisc injections with a notation that Plaintiff was status post right knee meniscectomy.[40]

On September 9, 2023, Catherine Choi, DO, completed a medical report form for Plaintiff.[41] She said she treated Plaintiff from 2016/2017 to present.[42] She said that he had right hand and shoulder pain; right knee pain, status-post meniscectomy; chronic back pain; minimal degenerative spondylosis; and primary osteoarthritis of the right knee.[43] Dr. Choi said that Plaintiff's symptoms were decreased right hand grip strength, and inability to stand too long due to back pain; and that he had been treated with osteopathic manipulation, ibuprofen/Tylenol, physical therapy, and Synvisc injections in the right knee.[44]

---

[40] AR 1087.

[41] AR 1089-1091.

[42] AR 1089.

[43] *Id.*

[44] *Id.*

3.    <u>ALJ's Reasons and Analysis</u>

The ALJ gave very little reasoning regarding Plaintiff's complaints of right knee pain and limitation prior to October 27, 2022, and never actually used the word knee but rather discussed Plaintiff's gait in general.  She noted as follows:

> Examinations from October 2018 showed the claimant had mild tenderness to palpation of the thoracic and lumbar areas of the spine, slow and antalgic gait, limited range of motion to the cervical and lumbar areas of the spine, and positive lumbar compression and distraction testing on the right (Exhibit 13F/18-19 & 30). One examination from October 2018 showed the claimant had grossly intact lower extremity motor and sensory function as well as normal grip strength bilaterally (Id./30). Imaging of the spine revealed mild degenerative changes in the thoracic and lumbar areas of the spine (Exhibit 12F).[45]

She additionally noted:

> Physical therapy notes from November 2018 showed the claimant reported improvement in walking because his walking increased from 15 minutes to 1 hour (Exhibits 13F/6 and 14F/2). The physical therapist indicated the claimant was progressing well and had improvement in range of motion of the trunk (Id.).[46]

---

[45] AR 743.

[46] AR 744.

As to the period after October 27, 2022, the ALJ articulated the following reasoning:

> The record showed that on October 28, 2022 the claimant sought treatment for right knee pain (Exhibit 23F/4). At that visit, the claimant reported the knee pain started after he fell on October 27 (Id.). The examination showed the claimant had full range of motion of both lower extremities but point tenderness to the medial collateral aspect of the right knee (Id.). Initially, the claimant was diagnosed with a medial collateral ligament sprain of the knee (Id./5). However, the claimant continued to complain of knee pain and December 2022 MRI of the right knee revealed findings that suggested a radial tear involving the posterior horn of the medial meniscus (Exhibit 23F/11-12). The claimant had a partial medial meniscectomy with partial chondroplasty of the medial femoral condyle of the right knee in July 2023 (Id./7). The claimant was diagnosed with osteoarthritis of the right knee (Exhibit 21F). Despite surgery, the claimant continued to complain of right knee pain and 2024 x-ray showed the claimant had grade 2-3/4 early mild degenerative change to the knee (Exhibit 26F/2).[47]

4.    The ALJ's Consideration of the Medical Opinions

The ALJ considered each of the three medical opinions regarding Plaintiff's physical limitations and found all three unpersuasive.

On September 7, 2017, State agency consultant Debra Baylor, MD, reviewed Plaintiff's file and opined that Plaintiff would have the

---

[47] AR 746.

ability to occasionally lift and carry up to 50 pounds, to frequently lift and carry up to 25 pounds, to stand or walk for up to 6 hours in an eight-hour day, and to sit for up to 6 hours in an eight-hour day.[48] The records reviewed by Dr. Baylor did not include records commencing in October 2017 regarding right knee pain.[49]

As noted above, on September 9, 2023, Catherine Choi, DO, completed a medical report form for Plaintiff.[50] She opined that as a result of his right hand and shoulder pain; right knee pain, status-post meniscectomy; chronic back pain; minimal degenerative spondylosis; and primary osteoarthritis of the right knee, Plaintiff would be limited to performing work at the sedentary level.[51]

5.    <u>Analysis</u>

The ALJ did not properly articulate her consideration of Plaintiff's allegations of knee pain from October 2017 to October 2022.

---

[48] AR 98-100.

[49] AR 96-97.

[50] AR 1089-1091.

[51] *Id.*

As noted above, the ALJ focused her analysis of Plaintiff's complaints regarding his right knee to the period after October 27, 2022. Her consideration of that issue was crucial to her decision, as it was a finding that Plaintiff was limited by his knee injury that rendered him to be able to perform only sedentary work and thereby disabled pursuant to the medical-vocational guidelines.[52] The ALJ stated:

> The combination of the claimant's severe impairments with the abnormal examination findings as well as the claimant's need for surgery to the right knee supports limiting the claimant to sedentary work instead of light work.[53]

With regard to the period prior to October 27, 2022, the ALJ found that Dr. Baylor's findings were not persuasive, noting the following:

> The prior administrative findings from the State agency, Debra Baylor, M.D., are not persuasive (Exhibit 4A). Dr. Baylor supported their findings by discussing the claimant's allegations and examination findings (Id.). However, the imaging studies showing the claimant had degenerative changes to the lumbar and thoracic spine and examinations showing tenderness to palpation of the thoracic and lumbar spine and limited range of motion to the lumbar spine supports limiting the claimant to light work as well as

---

[52] AR 746-747.

[53] AR 746.

supports limiting the claimant to occasional climbing of ladders, ropes, and scaffolds (Exhibits 9F/2; 12F; 13F/18-19 & 30; 15F/5; and 20/29). Furthermore, the periodic examinations showing normal strength to the right upper extremity contradicts limiting the claimant to occasional fingering (Exhibits 11F/15 and 13F/30).[54]

In discussing Dr. Baylor's opinions, the ALJ failed to consider that Dr. Baylor's review of the record was performed approximately one month prior to Plaintiff's first reported symptoms of right knee pain.[55]

Similarly, the ALJ failed to consider that Dr. Choi's medical report was rendered in September 2023, after it was determined that Plaintiff suffered from grade 3-4 chondromalacia in his right knee.[56]

When addressing the period after October 27, 2022, the ALJ stated the following:

The record showed that on October 28, 2022 [Plaintiff] sought treatment for right knee pain (Exhibit 23F/4). At that visit, [Plaintiff] reported the knee pain started after he fell on October 27 (Id.). The examination showed [Plaintiff] had full range of motion of both lower extremities but point

---

[54] AR 744.

[55] *Id*.

[56] AR 744-745.

tenderness to the medial collateral aspect of the right knee (Id.). Initially, [Plaintiff] was diagnosed with a medial collateral ligament sprain of the knee (Id./5). However, [Plaintiff] continued to complain of knee pain and December 2022 MRI of the right knee revealed findings that suggested a radial tear involving the posterior horn of the medial meniscus (Exhibit 23F/11-12). [Plaintiff] had a partial medial meniscectomy with partial chondroplasty of the medial femoral condyle of the right knee in July 2023 (Id./7). [Plaintiff] was diagnosed with osteoarthritis of the right knee (Exhibit 21F). Despite surgery, [Plaintiff] continued to complain of right knee pain and 2024 x-ray showed the claimant had grade 2-3/4 early mild degenerative change to the knee (Exhibit 26F/2).[57]

The ALJ erred by failing to consider the treatment sought by Plaintiff prior to October 28, 2022, as well as the consistent complaints made by Plaintiff of pain in his right knee. The ALJ did not consider that the treatment notes from the period prior to October 27, 2022, were consistent with those of October 28, 2022. When examined on October 28, 2022, Plaintiff reported pain and tingling in the knee and had no bruising or effusion swelling but was tender at the medial collateral aspect.[58] When Plaintiff first reported symptoms of knee pain

---

[57] AR 746.

[58] AR 1095.

in October 2017 there was no swelling but there was limited range of motion.[59]  When Plaintiff was seen by Dr. Vigil in November 2021, he continued to report knee pain and had crepitus and limited extension.[60]

The ALJ additionally erred in stating that Plaintiff's diagnosis of advanced chondromalacia was  based upon a March 2024 X-ray.[61] The diagnosis of grade 3-4 chondromalacia was made on July 3, 2023, based upon the results of arthroscopic surgery.[62] Moreover, an MRI of the knee in December 2022 indicated arthritic changes, thinning of the cartilage, radial tears, and chronic degeneration.[63] The ALJ's impression that advanced chondromalacia was not identified until 2024 is error, as it was identified as early as 2022.

_____

[59] AR 600.

[60] AR 601.

[61] AR 746.

[62] AR 1100.

[63] AR 1102-1103.

1     There is no dispute that as of December 2022 to July 2023

2  Plaintiff was diagnosed with a degenerative condition and that he was

3  diagnosed with severe degenerative changes.

4     "Social Security proceedings are inquisitorial rather than

5  adversarial. It is the ALJ's duty to investigate the facts and develop the

6  arguments both for and against granting benefits[.]"[64]  The ALJ has an

7  affirmative duty to assist the claimant in developing the record "when

8  there is ambiguous evidence or when the record is inadequate to allow

9  for proper evaluation of the evidence."[65]

10  _____

11  [64] *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).

12  [65] *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see*

13  *also Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam)

14  ("In Social Security cases the ALJ has a special duty to fully and fairly

15  develop the record and to assure that the claimant's interests are

16  considered. This duty exists even when the claimant is represented by

17  counsel.") (citation omitted). At the same time, "the ALJ is the final

18  arbiter with respect to resolving ambiguities in the medical evidence."

19

DISPOSITIVE ORDER - 23

The record indicates that by October 2022 Plaintiff was suffering from advanced degenerative changes in his right knee. The record is unclear to an untrained individual, however, at what point Plaintiff's degenerative conditions would have been expected to have impacted his ability to perform work above the sedentary exertional level. As noted above, the only medical opinion rendered that considered the issue is Dr. Choi's opinion which limited Plaintiff to sedentary work, but even that opinion is unclear as to the date on which the restriction to sedentary work would apply.

It has been held in this Circuit that an ALJ may not substitute her lay interpretation of raw medical data in making an RFC assessment in lieu of a qualified expert's medical opinion.[66]

The Court concludes that given the lack of medical opinion evidence regarding the progression of Plaintiff's degenerative condition

---

[66] *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993)

the ALJ erred in failing to either order an updated consultative examination[67] or call medical expert to testify at the hearing.[68]

The ALJ's finding that Plaintiff's symptom reports were "not entirely consistent" with the record is not supported by substantial evidence. The ALJ's decision not to call a medical expert to testify at the hearing and offer an opinion based on the more recent medical records, before discounting Plaintiff's symptom reports contributed to this error.[69] While an ALJ is given the discretion to determine whether to call a medical expert to "clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing" or there are "question(s) about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time," the ALJ consequentially erred by not exercising this discretion to call a medical

_____

[67] 20 C.F.R. § 404.1517,

[68] 20 C.F.R. §§ 404.1519, 404.1519a.

[69] Program Operations Manual System, HA 01250.034.

expert to resolve these conflicts/questions and instead proceeded herself to interpret the medical record.

**B.    Medical Opinions: the ALJ must reconsider on remand.**

Because this matter is being remanded due to the ALJ's errors when evaluating Plaintiff's symptom reports, the ALJ is to reevaluate the medical opinions on remand. The ALJ is to be mindful that Dr. Baylor's opinion was rendered in 2017, just prior to Plaintiff's initial treatment for right knee pain.

**C.    <u>Other Issues: these are rendered moot.</u>**

Because the Court has remanded the case for further development of the record, the other issues raised are rendered moot.

**D.    Remand: further proceedings**

Plaintiff seeks a remand for payment of benefits. However, further development is necessary for a proper disability determination, including both the development of the medical record and either ordering a new consultative examination by a qualified medical provider, who is to be given a copy of sufficient longitudinal medical records to aid that examiner in reaching an opinion as to the progression of Plaintiff's degenerative condition, and/or calling a

medical expert qualified to testify as to the expected progression of such condition.[70] The ALJ is to then reconsider the medical evidence, Plaintiff's symptom reports, and reevaluate the sequential process.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[70] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 12th day of June 2025.

_____
EDWARD F. SHEA
Senior United States District Judge